**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT

8       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9       SAN JOSE DIVISION

10   ASUSTEK COMPUTER INC. ET AL,          CASE NO. 5:CV 11-00192-EJD

11                                          ORDER: (1) GRANTING IN PART
                   Plaintiff(s),            DEFENDANTS' MOTION TO DISMISS; (2)
12       v.                                 DENYING DEFENDANTS' MOTION TO
                                            TRANSFER; AND (3) DENYING
13   AFTG-TG LLC ET AL,                     DEFENDANTS' MOTION TO STAY

14
                   Defendant(s).
15   _____/      [Re: Docket Item No. 24]

16                          **I. INTRODUCTION**

17       Plaintiffs ASUSTeK Computer Inc., ASUS Computer International, Pegatron Corporation,

18   Pegatron Technology Service Inc., Unihan Corporation, (collectively "Plaintiffs") initiated this lawsuit

19   against Defendants Phillip M. Adams & Associates, LLC ("PMAA"), AFTG-TG LLC ("AFTG"), and

20   Phillip M. Adams (collectively referred to as "Defendants") seeking: (1) a declaratory judgment that

21   they do not infringe twelve patents[1] invented by Dr. Adams and owned by PMAA and AFTG ("the

22   Adams Patents") (Docket Item No. 1, "Complaint" at 2:5-10), and (2) a declaratory judgment that each

23   of the patents-in-suit is invalid and unenforceable.[2]  See Complaint.

24   _____

25       [1]   United States Patent Nos. 5,983,002; 6,401,222; 6,687,858; 6,691,181; 6,842,802;
     7,069,475; 7,249,203; 7,251,752; 7,409,601; 7,366,804; 7,472,207; and 7,653,766 (collectively,
26   "patents in suit").

27       [2]   The Complaint included two additional plaintiffs:  ASRock Incorporated, and ASRock
     America, Inc.  Docket Item No. 1.  On November 30, 2011, however, those two plaintiffs filed a
28   Notice of Voluntary dismissal against Defendants.  See Docket Item Nos. 33, 35.

                                            1

United States District Court

For the Northern District of California

1    Pending before the court is Defendants' motion to dismiss the Complaint or, in the alternative,

2    to transfer this case to the District of Wyoming or stay this case pending an appeal in the District of

3    Wyoming.  Having  reviewed the parties' briefs and accompanying submissions, the court finds this

4    matter appropriate for decision without oral argument.  Civ. L. R. 7-1(b).  For the reasons described

5    below, the court **DENIES IN PART** and **GRANTS IN PART** the motion to dismiss, transfer, or stay.[3]

## II. BACKGROUND

**A.     The Parties**

8    Plaintiff ASUSTeK Computer Inc. ("ASUSTeK") is a Taiwan corporation that designs, develops

9    and manufactures computers and other electronic products which are shipped and sold in this District.

10   Compl., ¶ 6.   Plaintiff ASUS Computer International ("ACI") is a California Corporation, a

11   wholly-owned subsidiary of ASUSTeK, and sells ASUSTeK products under the ASUS brand name.

12   Compl., ¶ 7.  Plaintiff Pegatron Corporation ("Pegatron"), a Taiwan corporation, is a Design and

13   Manufacturing Service company with technical support and service facilities in this District.  Compl.,

14   ¶ 8.  Plaintiff Pegatron Technology Service Inc. ("PTS"), an Indiana corporation, is a wholly-owned

15   subsidiary of Pegatron providing after-sale service to companies located in this District.  Compl., ¶ 9.

16   Plaintiff Unihan Corporation ("Unihan") is a Taiwan corporation, a wholly-owned subsidiary of

17   Pegatron, that designs, manufactures and sells computer peripherals and audio-video products for other

18   brand-name companies.  Compl., ¶ 10.

19   Defendant AFTG was a Utah limited liability corporation that was voluntary dissolved and

20   re-formed as a Wyoming limited liability company in late 2010.  Compl., ¶ 13.  Defendant PMAA is

21   a Utah limited liability company, and is also registered as a Wyoming limited liability company.

22   Compl., ¶ 14.  Defendant Dr. Phillip Adams, a Wyoming resident, is the owner and head of the

23   defendant companies PMAA and AFTG.  (Collectively, the "Adams Defendants").  Mot. at ¶ 2.

**B.     The Wyoming Actions**

25   On October 18, 2010, Defendants filed several complaints alleging willful direct and indirect

26   infringement of the "patents-in-suit" against Plaintiffs and others in the United States District Court for

27

28         [3]   This disposition is not designated for publication in the official reports.

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

the District of Wyoming.  See AFTG-TG, L.L. et al. v. Nuvoton Technology Corp. et al., No. 2:10-cv-00227-NDF (D. Wyo., filed Oct. 18, 2010); AFTG-TG, L.L.C. et al. v. Gigabyte Technology Co. Ltd. et al., No. 2:10-cv-00228-NDF (D. Wyo., filed Oct. 18, 2010); AFTG-TG, L.L.C. et al. v. Winbond Electronics Corp. et al., No. 2:10-cv-00229-NDF (D. Wyo., filed Oct. 18, 2010) (collectively, the "Wyoming Actions").

On or around February 24, 2011, all of the complaints filed against Plaintiffs in the District of Wyoming were dismissed by U.S. District Court Judge Nancy Freudenthal for lack of personal jurisdiction.  Defendants have noticed appeals to the Federal Circuit Court of Appeals contesting these dismissals and all appeals are currently pending.  See AFTG-TG, L.L.C. et al. v. Nuvoton Technology Corp. et al., No. 11-1306 (Fed. Cir., appealed Apr. 12, 2011); AFTG-TG, L.L.C. et al. v. Gigabyte Technology Co. Ltd. et al., No. 11-1290 (Fed. Cir., appealed Apr. 12, 2011); AFTG-TG, L.L.C. et al. v. Winbond Electronics Corp. et al., No. 11-1307 (Fed. Cir., appealed Apr. 12, 2011).

**C.     The Wistron Action**

On October 1, 2010, four corporations filed a complaint in this court for declaratory judgment of non-infringement and invalidity of two patents at issue in the Instant Action against Defendants AFTG and PMAA (the "Wistron Action").  Nelson Decl., Exh. 43; Wistron Corporation et al v. Phillip M. Adams & Associates LLC , Case No. 3:10-CV-04458 EMC.  The plaintiffs in the Wistron Action later amended their complaint to include the remaining patents asserted in the instant action, and to add Dr. Adams as an additional named defendant. Id., Exh. 44.  Defendants AFTG, PMAA and Dr. Adams moved to dismiss the Wistron Action for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. Id., Exh. 45.  The Adams Defendants moved alternatively to transfer the action to the District of Wyoming.  See id.

On April 28, 2011, the then Honorable Magistrate Judge Edward Chen issued an order in the Wistron Action, finding that the same Adams Defendants in the Instant Action "have substantial contacts with California sufficient to support personal jurisdiction, and there is a causal relationship between these contacts and Plaintiffs' suit."  Nelson Decl., Exh. 45 at 16.  The plaintiffs in the Wistron Action sought declaratory judgment of non-infringement and invalidity with respect

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

1   to the same patents at issue in the Instant Action. <u>See id.</u> at 1 n.1-2; compare Complaint, ¶ 1.

2   **D.     The Instant Action**

3        While the actions against Plaintiffs were pending in the District of Wyoming, Plaintiffs filed the

4   Complaint herein seeking a declaratory judgment of non-infringement and invalidity ("Instant Action").

5   <u>See</u> Complaint, Docket Item No. 1.  In their Complaint, Plaintiffs allege the following: "PMAA and

6   AFTG allege, in the Wyoming Actions, that the Plaintiffs have 'infringed various claims of each of the

7   patents-in-suit in violation of 35 U.S.C. § 271 through, among other activities, the manufacture, use,

8   importation, sale and/or offer for sale of computer chips, motherboards, computers and other products,

9   as well as using infringing methods including but not limited to testing of Defendants' products as a part

10  of the manufacturing process.'" <u>Id.</u> at ¶ 31.  "PMAA and AFTG further allege that Plaintiffs 'have also

11  knowingly and intentionally induced others to infringe under 35 U.S.C. § 271(b) (such as its customers

12  and end-users . . . throughout the United States) by intentionally aiding, assisting and encouraging their

13  infringement, and . . . have knowingly contributed to the infringement of others under 35 U.S.C. §

14  271(c) (such as its customers and end-users . . . throughout the United States) by supplying their

15  technical know-how and infringing computer chips and motherboards . . . .'" <u>Id.</u> at ¶ 33.  The Complaint

16  requests declaratory judgment of non-infringement of each of the twelve patents at issue.

17       On May 12, 2011, Defendants filed the instant Motion to Dismiss.  <u>See</u> Memorandum of Points

18  in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer or Stay ("Mot."), Docket

19  Item No. 28.  Plaintiffs oppose the motion on multiple grounds.  <u>See</u> Opposition to Motion to Dismiss

20  or, in the Alternative, to Transfer or Stay ("Opp'n"), Docket Item No. 30.

21                                    **III. DISCUSSION**

22       In their motion to dismiss, Defendants allege that this Court lacks personal jurisdiction over

23  them, such that the suit must be dismissed pursuant to Rule 12(b)(2).  In addition, Defendants argue that

24  the complaint fails to state a claim and should be dismissed pursuant to Rule 12(b)(6).  Alternatively,

25  Defendants seek to: (1) transfer this action to the District of Wyoming, or (2) stay this action pending

26  appeal of the Wyoming Actions.

27

28

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1

2

**Magistrate Judge Chen's Prior Determination**

In the Winstron Action, then Magistrate Judge, now District Court Judge Chen of the Northern

3   District of California found that the Adams Defendants are subject to personal jurisdiction in California.

4   Wistron Corporation et al v. Phillip M. Adams & Associates LLC , Case No. 3:10-CV-04458 EMC,

5   2011 WL 1654466 (N.D. Cal. 2011).  There is a causal relationship between the Adams Defendants'

6   contacts and the claims made by the plaintiffs in the Winstron Action, and the Adams Defendants'

7   contacts and the claims made by Plaintiffs in the Instant Action.  Indeed, Judge Chen considered the

8   same legal arguments by the same defendants, regarding the same patents-in-suit, and found that the

9   Adams Defendants were subject to the personal jurisdiction of this District Court.  This court agrees

10   with Judge Chen's decision and finds that his reasoning applies in the Instant Action as well.  In the

11   interests of comity, the Court adopts the reasoning and language of Judge Chen to the extent the Adams

12   Defendants raise the same legal arguments in this case.

13   **A.      Motion to Dismiss for Lack of Personal Jurisdiction**

14   Defendants move to dismiss the Complaint based on a lack of personal jurisdiction.  See Fed.

15   R. Civ. P. 12(b)(2).  Plaintiff bears the burden of making a prima facie showing of general or specific

16   jurisdiction over each and every defendant it has sued.  See Calder v. Jones, 465 U.S. 783, 790 (1984);

17   Data Disc, Inc. v. Sys. Tech. Associates, Inc., 557 F. 2d 1280, 1285 (9th Cir. 1977) ("[T]he party

18   seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction

19   exists. . . . [Absent a material dispute as to jurisdictional facts,] "a plaintiff must make only a prima facie

20   showing of jurisdictional facts through submitted materials in order to avoid [dismissal].").  Where "a

21   plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate

22   facts which support a finding of jurisdiction in order to avoid a motion to dismiss."  Data Disc, 557 F.

23   2d at 1285 (citations omitted); Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir.

24   2003).[4]  In determining whether Plaintiff have made a prima facie showing of personal jurisdiction, the

25   _____

26       [4]     If important jurisdictional facts are contested, the Court may permit discovery to aid the
jurisdictional determination or hold a preliminary hearing to resolve contested issues.  Data Disc,

27   557 F. 2d at 1285 (noting that a plaintiff "put to his full proof . . . must establish the jurisdictional
facts by a preponderance of the evidence").  Although some jurisdictional facts are contested here,

28   neither party has requested a separate hearing to resolve the dispute, and the Court declines to order

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

1  Court construes the pleadings and affidavit in the light most favorable to Plaintiff.  Graphic Controls

2  Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

3         In deciding whether the Court has jurisdiction over an out-of-state defendant, the Court looks

4  to Federal Circuit precedent.  See Breckenridge Pharms., Inc. v. Metabolife Labs., Inc., 444 F.3d 1356,

5  1363 (Fed. Cir. 2006) (citing Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir.

6  2003)); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation, 297 F.3d 1343, 1348

7  (Fed. Cir. 2002) ("Federal Circuit law governs the issue of personal jurisdiction in patent-related

8  cases."); Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).

9  The analysis set forth in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-77 (1985) is at the heart

10  of the personal jurisdiction analysis applied in both the Ninth Circuit and the Federal Circuit, and both

11  Circuits apply the same three-part test when applying the minimum contacts standard set forth by the

12  Supreme Court.  See, e.g., Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).  As such,

13  district courts have cited both Ninth Circuit and Federal Circuit precedent with respect to personal

14  jurisdiction.  See, e.g., McKenzie v. Hero Indus., 2009 U.S. Dist. LEXIS 67932, 7-8 (D. Ariz. July 29,

15  2009) (citing Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,  223 F.3d 1082, 1087 (9th Cir. 2000)).

16  Nonetheless, the Court relies primarily on Federal Circuit precedent herein.

17         In analyzing personal jurisdiction, the court engages in a two-step inquiry:  (1) whether the

18  state's long-arm statute extends to this defendant; and (2) whether the assertion of personal jurisdiction

19  would violate due process.  Deprenyl Animal Health, 297 F.3d at 1348; Inamed Corp. v. Kuzmak, 249

20  F.3d 1356, 1359 (Fed. Cir. 2001). "Because California's long-arm jurisdictional statute is coextensive

21  with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction

22  comports with due process."  Inamed, 249 F.3d at 1360.  The focus here is thus on due process.

23         For a court to exercise personal jurisdiction over a nonresident defendant, due process requires

24  that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of

25  the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe

26  Company v. Washington, 326 U.S. 310, 316 (1945); see also Cal. Civ. Proc. § 410.10 ("A court of this

27  ────────────────────

28  one sua sponte. As explained herein, the Court finds the pleadings and papers to be a sufficient

6

1   state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the

2   United States."). The requisite contacts are present "where the defendant 'deliberately' has engaged in

3   significant activities within a state . . . or has created 'continuing obligations' between himself and

4   residents of the forum." Burger King, 471 U.S. at 475-76 (quoting Keeton v. Hustler Magazine, Inc.,

5   465 U.S. 770, 781 (1984), and Travelers Health Ass'n v. Virginia, 399 U.S. 643, 648 (1950)) (internal

6   citations omitted). Personal jurisdiction may be exercised where the defendant "deliberately has

7   engaged in significant activities within the State, or *has created continuing obligations between himself*

8   *and residents of the forum*, [because] he manifestly has availed himself of the privilege of conducting

9   business there, and because his activities are shielded by the benefits and protections of the forum's

10  laws." Akro, 45 F. 3d at 1545 (emphasis in original) (quoting Burger King, 471 U.S. at 476). Mere

11  random, fortuitous, or attenuated connections with the forum state, however, fall short of the minimum

12  contacts threshold. Burger King, 471 U.S. at 475. There are two forms of personal jurisdiction: general

13  jurisdiction and specific jurisdiction. See Deprenyl Animal Health, 297 F.3d at 1350 (observing that

14  general jurisdiction arises only when a defendant maintains "continuous and systematic contacts with

15  the forum state").

16          Plaintiffs do not argue that the Court has general jurisdiction over Defendants. Instead, Plaintiffs

17  contend that specific jurisdiction over Defendants exists by virtue of their patent-related activities in

18  California. See Docket Item No. 30 ("Opp'n"), at 1. The Court accordingly turns to an analysis of

19  specific jurisdiction.

20          Specific jurisdiction exists where the cause of action arises out of or relates to a defendant's

21  contacts with the forum state, even if those contacts are isolated and sporadic. Trintec Indus. v. Pedre

22  Promotional Prods., 395 F.3d 1275, 1279 (Fed. Cir. 2005). The Court considers three factors in

23  determining whether the exercise of specific personal jurisdiction over an out-of-state defendant

24  comports with due process: (1) whether the defendant "purposefully directed" its activities at residents

25  of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities in the forum;

26  and (3) whether the exercise of jurisdiction is "reasonable and fair." Deprenyl Animal Health, 297 F.3d

27  at 1351. See also Akro, 45 F. 3d at 1545-46 (finding specific jurisdiction over a nonresident patent

28

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

1   holder based substantially upon correspondence between the parties); Breckenridge, 444 F.3d at 1363;

2   Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) ("The first prong

3   is satisfied by either purposeful availment or purposeful direction . . . ."). "If the plaintiff succeeds in

4   satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling

5   case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger v. Fred Martin Motor

6   Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Burger King, 471 U.S. at 477); Breckenridge, 444 F.3d

7   at 1363. "[J]urisdiction may not be avoided merely because the defendant did not physically enter the

8   forum state." Burger King, 471 U.S. at 476 (finding personal jurisdiction where the defendant

9   franchisees "reached out beyond" the borders of their state to negotiate the franchise agreement at

10  issue). See generally Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1343-1344 (Fed. Cir.

11  2008) ("All considerations must be weighed, not in isolation, but together, in deciding whether the

12  forum can, and should, entertain the suit.")

13           1.       Purposeful Direction

14           The Court must first decide whether Defendants purposefully directed relevant activities to

15  residents in the forum state. Inamed, 249 F. 3d at 1360. "A foreign act that is both aimed at and has

16  an effect in the forum state satisfies the purposefully directed portion of the specific jurisdiction test."

17  McKenzie v. Hero Indus., 2009 U.S. Dist. LEXIS 67932, 7-8 (D. Ariz. July 29, 2009) (citing Bancroft

18  & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). "The relevant inquiry for

19  specific personal jurisdiction purposes then becomes to what extent has the defendant patentee

20  purposefully directed such enforcement activities at residents of the forum." Avocent Huntsville, 552

21  F. 3d at 1332 (internal quotations and brackets omitted).

22           Plaintiffs catalog a lengthy list of contacts Defendants (Dr. Adams in particular) have had with

23  California residents, including:

24           1.       Defendants' negotiated and entered into license agreements with a number

25                    of California corporations, including Hewlett Packard Co., Gateway, Inc.,

26                    Fujitsu Computer Products of America, Quanta Computer USA, Inc., Sony

27                    Electronics, Inc., and Winbond Electronic Corp. of America.   See

28

8

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

Declaration of Shanee Y.W. Nelson ("Nelson Decl.," Docket Item No. 30-1), Exhs. 22-27; 28 at ¶ 43.  Each of these corporations is headquartered in California.  See id.  In connection with those negotiations, Defendants made a number of presentations and attended meetings in California relating to the patents at issue in the Instant Action.  For example, Adams demonstrated his detector test program, FDC check, at Hewlett-Packard in Palo Alto.  Id., Exh. 29 at 231:3-17.

2.    Dr. Adams and PMAA entered into a license agreement with Hewlett-Packard whereby they agreed to test and implement certain technology covered by the patents at issue in this action and to provide consulting services to Hewlett-Packard in exchange for $27.5 million in fees. Id., Exh. 28, ¶¶ 45-46.  Additionally, Dr. Adams and PMAA agreed to enforce the patents against anyone they believed to infringe the patents.  Id., Exh. 29 at 1690:14-1691:2.  Dr. Adams and PMAA executed a similar license agreement with Compaq in October 2002. Id.; see also id. at 147:10-148:6.

3.    Dr. Adams also worked with Hewlett-Packard's PC lab and networking groups in Cupertino, California in detecting and resolving FDC data corruption defects in products manufactured by or for Hewlett-Packard. See Nelson Decl., Exh. 29 at 187:20-188:5.  Dr. Adams declared that any time there was a question at Hewlett-Packard, he would fly to California or hold teleconferences to address the issue.  Id., Exh. 38 at ¶ 6.

4.    Dr. Adams also arranged a meeting to discuss his technology at Gateway Computers' San Diego headquarters. Id. at 256:4-10.  Dr. Adams had several licensing discussions with Gateway, but the negotiations failed to result in an agreement.  See, e.g., id. at 176:14-177:8.

5.    Adams and PMAA traveled to San Diego, California to demonstrate

9

United States District Court

For the Northern District of California

1   detecting products to Sony Electronics, answer technical questions from

2   Sony, and engage in license discussions with Sony. Id., Exh. 30, ¶¶ 3-5. Dr.

3   Adams' negotiations with Sony were also unsuccessful. Id., 3.

4   6.   Pursuant to express obligations in their license agreements with HP and

5   Compaq, Dr. Adams and PMAA initiated a host of lawsuits against

6   California corporations relating to the patents at issue in this action.

7   Specifically, Dr. Adams and PMAA initiated a *qui tam* action in the San

8   Francisco County Superior Court, styled State of California v.

9   Hewlett-Packard et al., Case No. 999978 against Hewlett-Packard and

10   several other California-based defendants, including Plaintiff ACI, and

11   Gateway. See Nelson Decl., Exhs. 28, ¶¶ 10, 26-55; 31; 32.

12   7.   Dr. Adams and PMAA filed at least four actions in the District of Utah

13   pursuant to their obligations under the HP and Compaq agreements. See,

14   e.g., id., Exhs. 33-36, ¶¶ 7-9 ("In May of 2005, ***in compliance with the terms***

15   ***of the Hewlett Packard and Compaq license agreements***, Adams was forced

16   to file suit against numerous companies in the computer industry . . . .

17   Previously, Dr. Adams had been involved and occupied in litigation with

18   Gateway Computer Company from 2002 until 2006 . . . . Dr. Adams has been

19   involved in litigation since at least 2002 against computer companies such

20   as Gateway, Sony, Dell, IBM, Lenovo, Quanta, Fujitsu, and Dell [sic].)

21   (emphasis added)); Exhs. 37-39.

22   8.   Dr. Adams and PMAA also filed an action in Utah styled Phillip M. Adams,

23   et al. v. Jeffrey L. Simpton, et al., Case No. 2:01-cv-0122-B (D. Utah),

24   against two California Deputy Attorneys General seeking relief for alleged

25   infringement taking place in California and alleged interference with Dr.

26   Adams' ongoing contractual relationship with Hewlett-Packard. See Nelson

27   Decl., Exh. 28.

28

10

United States District Court

For the Northern District of California

9.      Dr. Adams and PMAA filed several actions for patent infringement in the District of Wyoming relating to the same patents at issue in the Utah trial, as well as nine additional patents relating to the same technology that are the subject of Dr. Adams' and PMAA's agreement with Hewlett-Packard. Nelson Decl., Exhs. 33-36.  Of the 35 defendants named in the Wyoming cases, 20 are California corporations. Id., Exhs. 25; 27; 33, ¶ 18; 34, ¶¶ 18, 20, 23, 25, 29, 31, 34, 36, 38, 43, 46, 49, 51; 35, ¶¶ 11, 13, 15; 36, ¶¶ 19, 23, 26.

Defendants dispute Plaintiffs' characterization of their contacts with this forum.  They contend that their California contacts "are hardly enough to demonstrate that Defendants have any contact with this forum, let alone sufficient contacts related to Plaintiffs' . . . claims of invalidity and non-infringement." Mot. at 8-9.  According to Defendants, "Dr. Adams has never been to California for the purpose of advancing AFTG, and the last time he was in California advancing the interests of PMAA was in 2000." Mot. at 5.  Defendants further claim that "Dr. Adams has conducted absolutely no business in California for at least ten years," "AFTG has never done business in California," and "Defendants have not been involved in litigation in California for over ten years."[5]  Mot. at 5, 9, 10. Defendants couch Dr. Adams' behavior and policy with respect to this forum not as one of purposeful direction or purposeful availment, but of purposeful *avoidance*.  See Mot. at 4-5.  ("Dr. Adams has purposefully avoided any engagement with the State of California since acting as a relator in 1998" and "[i]t has been nearly 10 years since Dr. Adams, or his entities, conducted any business in California, including any trip to assist HP" such that he has shed the 'taint' of this jurisdiction "over the last decade of intentional avoidance.").

As Defendants contend, merely sending cease-and-desist letters in the absence of physical presence in the forum, "by themselves," do not establish personal jurisdiction. See Mot. at 7 (citing Red

---

[5]    The court notes that Defendants' representation of no involvement in California litigation is directly contradicted by the existence of the Winstron Action.

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

1 <u>Wing Shoe Co. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) ("A patentee

2 should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to

3 be located there of suspected infringement.")). <u>See</u> <u>Breckenridge</u>, 444 F. 3d 1356, 1366 (Fed. Cir. 2006)

4 ("[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with

5 parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the

6 patent at issue."). <u>Accord</u> <u>Hildebrand v. Steck Mfg. Co.</u>, 279 F.3d 1351, 1356 (Fed. Cir. 2002); <u>Inamed</u>,

7 249 F.3d at 1361. But Plaintiffs have identified something "more" than sending a warning letter. They

8 point to Defendants' licensing of at-issue patents to entities in California with an obligation to enforce

9 the patents. Opp'n at 12. The California contacts described above evidence that enforcement effort.

10 Plaintiffs argue that Defendants' systematic enforcement of these patents pursuant to its licensing

11 obligation with a California company against an alleged California infringer satisfies the purposeful

12 direction prong here. Opp'n at 11-12. The Court agrees.

13      Defendants filed the Wyoming Action naming California corporation ACI as a defendant. <u>See</u>

14 <u>AFTG-TG, L.L. et al. v. Nuvoton Technology Corp. et al.</u>, No. 2:10-CV-00227-NDF (D. Wyo., filed

15 Oct. 18, 2010); <u>AFTG-TG, L.L.C. et al. v. Gigabyte Technology Co. Ltd. et al.</u>, No.

16 2:10-CV-00228-NDF (D. Wyo., filed Oct. 18, 2010); <u>AFTG-TG, L.L.C. et al. v. Winbond Electronics</u>

17 <u>Corp. et al.</u>, No. 2:10-CV-00229-NDF (D. Wyo., filed Oct. 18, 2010) ("Complaint[s] for Patent

18 Infringement" naming Plaintiffs as defendants). By suing a California corporation, Defendants directed

19 activity toward a resident of this state. <u>See</u> <u>Akro</u>, 45 F. 3d at 1547 (citing <u>Calder</u>, 465 U.S. 783; <u>Keeton</u>

20 <u>v. Hustler Magazine, Inc.</u>, 465 U.S. 770 (1984)). In contrast to a warning letter which creates a

21 reasonable apprehension of litigation, the Wyoming Action presented the *actuality* of litigation for ACI.

22 More importantly, like the defendants in <u>Akro</u>, Defendants have incurred an obligation to enforce at

23 least some of the patents-in-suit pursuant licensing agreements with Hewlett-Packard Company ("HP"),

24 a California corporation. Defendants concede in their moving papers that the terms of an agreement

25 with HP "forced" Dr. Adams "to file suit against numerous companies in the computer industry for . .

26 . infringement of patented technology owned by Adams." Mot. at 2, ¶ 6. Likewise, the complaints in

27 the Wyoming Action state: "In May of 2005, in compliance with the terms of the Hewlett Packard and

28

12

United States District Court

For the Northern District of California

1  Compaq license agreements, Adams was forced to file suit against numerous companies in the computer

2  industry for the theft of trade secrets and infringement of patented technology owned by Adams (the

3  'Winbond Litigation')." Nelson Decl., Exh. 35 at ¶ 8.  At the April 6, 2011 hearing in the Winstron

4  Action, Defendants conceded that the Wyoming Action against Plaintiffs was brought, at least in part,

5  pursuant to Defendants' obligations under its license agreements with HP.  See Nelson Decl., Exh. 45,

6  Part 1.  Furthermore, in addition to suing Plaintiffs herein, Dr. Adams filed suits alleging infringement

7  of several of the patents-in-suit against other California-based computer companies.  Plaintiffs are

8  correct in asserting that enforcement actions taken pursuant to a California licensing agreement against

9  California residents satisfies the first prong of personal jurisdiction under Akro and Breckenridge.  See

10  Breckenridge, 444 F.3d at 1366 (holding that personal jurisdiction may be exercised where resident

11  exclusive licensee and licensor agreed, *inter alia*, to "cooperate reasonably in any enforcement action"

12  and that licensor would "provide consultation" with respect to "the science, medicine and marketing of

13  . . . related products, from time to time").  This is so irrespective of Defendants' lack of physical

14  presence in the state.

15      Pointing to Red Wing, 148 F.3d 1355, Defendants argue that their contacts with this forum are

16  insufficient to establish personal jurisdiction.  In Red Wing, however, none of the licensees in question

17  resided in the forum state; they merely conducted business there.  Red Wing, 148 F.3d at 1361.

18  Although the patent holder received royalties for sales made in the forum state, it "exercised no control

19  over the sales activities of its licensees" and "had no dealings with its licensees [in the forum state]."

20  Id. at 1358. The licensees' business in the forum state therefore amounted to "unilateral activity … not

21  attributable to the defendant."  Id. (quoting Burger King, 471 U.S. at 475 n.17) (internal quotation marks

22  omitted).  The Federal Circuit therefore concluded that an exercise of personal jurisdiction over the

23  defendant "would not comport with principles of fairness."  Id. at 1361.

24      Unlike the licensees in Red Wing, at least one licensee at issue here, HP, does not merely

25  conduct business in California; it is headquartered in California.  Nelson Decl., Exhs. 22-27; 28 at ¶ 43,

26  Exh. 17. Cf. Breckenridge, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (noting that a defendant  is subject

27  to "personal jurisdiction in the forum state if the exclusive licensee (or licensee equivalent) with which

28

13

United States District Court

For the Northern District of California

1   it has established a relationship is not headquartered in the forum state, but nonetheless conducts

2   business there") (citation omitted).  Defendants' business dealings and license agreements go far beyond

3   the mere receipt of royalty income from California.  Cf. Red Wing, 148 F.3d at 1357-58 (noting that the

4   licensor had no dealings with its resident licensees beyond the receipt of royalty income).

5        Defendants' reliance on Silent Drive, 326 F.3d 1194, is similarly misplaced.  In that case, the

6   plaintiff, Silent Drive, an Iowa corporation seeking a declaratory judgment of noninfringement, raised

7   multiple arguments in support of an exercise of jurisdiction over the defendant Texas corporation in

8   Iowa district court.  326 F.3d at 1197.  The defendant sent two letters to Silent Drive, along with a copy

9   of its patent, informing it of an injunction obtained in Texas.  Id. at 1198-99.  Besides the cease and

10  desist letters, the defendant's only contact with Iowa was that it had issued a news release describing

11  the injunction and patent and sent a copy of the news release to a potential customer of Silent Drive in

12  Iowa.  Id. at 1199.  Although it ultimately found jurisdiction on other grounds not relevant here, the

13  Federal Circuit concluded that an exercise of jurisdiction based on the letters would offend due process

14  because they primarily concerned an injunction obtained for misappropriation of trade secrets, which

15  was unrelated to the patent at issue.  Id. at 1202.

16       Unlike the letters in Silent Drive, the complaint filed in the Wyoming Action alleges

17  infringement by Plaintiffs herein of the patents-in-suit.  Even if Dr. Adams has never had an office, bank

18  account, or employee in California, his other California contacts, most notably his patent licensing with

19  and enforcement activities against California companies, are more extensive than the solitary press

20  release in Silent Drive.

21       The contacts in the instant case are far more akin to those of Akro than Silent Drive or Red

22  Wing.  Like the patent holder in Akro, Defendants entered into a long-term contract with a California

23  entity, HP, that created an ongoing obligation to enforce the patents-in-suit.  See Nelson Decl., Exh. 28,

24  ¶¶ 45-46; Exh. 29 at 1690:14-1691:2, 147:10-148:6.  As described above, Defendants have engaged in

25  a wide range of activities directed at California residents in connection with enforcement of their patents

26  and in compliance with their California licensing obligation.  In short, Defendants purposefully directed

27  their activities to California residents.  See Breckenridge, 444 F.3d at 1366 (A party may be subject to

28

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

1   personal jurisdiction as a consequence of "its relationship with its exclusive forum state licensee if the

2   license agreement, for example, requires the defendant-licensor, and grants the licensee the right, to

3   litigate infringement claims.") (citing <u>Akro</u>, 45 F.3d at 1546). <u>Cf.</u> <u>Burger King</u>, 471 U.S. at 479 (noting

4   the jurisdictional significance "prior negotiations and contemplated future consequences, along with the

5   terms of the contract and parties' actual course of dealing"); <u>Juniper Networks, Inc. v. Altitude Capital</u>

6   <u>Partners, L.P.</u>, No. 09-3449, 2010 WL 5141839, *6 (N.D. Cal. Dec. 13, 2010) (finding specific

7   jurisdiction over defendant based, in part, on its imputed contacts including "substantial dealings with"

8   and assignment of many rights to the patents-in-suit to a company whose principal place of business is

9   in Berkeley, California).

10          2.      Plaintiffs' Claims Arise Out of or Relate to Defendants' Contacts With California

11          The next question this Court must answer is whether Plaintiffs' claims arise out of or are

12   sufficiently related to Defendants' forum related activities. <u>See</u> <u>Schwarzenegger</u>, 374 F.3d at 802;

13   <u>Inamed</u>, 249 F.3d at 1362. The Court finds they are. This suit for declaratory and injunctive relief was

14   brought in anticipation of and in response to Defendants' enforcement of the patents-in-suit by way of

15   the Wyoming Actions. Those actions are part of Defendants' broad and extensive enforcement of their

16   California licensing agreement with HP directed in substantial part to California residents. For all these

17   reasons, the Instant Action arises out of and is related to Defendants' contacts with California.

18          3.      Fair Play and Substantial Justice

19          Even where sufficient contacts with the forum state exist to establish specific jurisdiction,

20   asserting jurisdiction may be inappropriate if it would be unfair. <u>See, e.g.</u>, <u>Patent Rights Prot. Grp., LLC</u>

21   <u>v. Video Gaming Techs., Inc.</u>, 603 F.3d 1364, 1369 (Fed. Cir. 2010). However, "[w]here, as here, a

22   defendant has directed its activities at residents of the forum state, the defendant cannot defeat

23   jurisdiction based on fairness considerations unless it 'presents a compelling case that the presence of

24   some other considerations would render jurisdiction unreasonable.'" <u>Juniper Networks</u>, 2010 WL

25   5141839 at *7 (quoting <u>Burger King</u>, 471 U.S. at 477 (brackets omitted)). <u>See</u> <u>Inamed</u>, 249 F.3d at

26   1363. "This standard is met only in rare situations in which the plaintiff's interest and the state's interest

27   in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden

28

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

1   of subjecting the defendant to litigation within the forum." <u>Beverly Hills Fan Co. v. Royal Sovereign

2   Corp.</u>, 21 F.3d 1558, 1568 (brackets and internal quotation omitted). In determining whether this is one

3   of those rare situations, the Court considers (1) the burden on the defendant, (2) the interests of the

4   forum state, (3) Plaintiffs' interest in obtaining relief, (4) the interstate judicial system's interest in

5   efficiently resolving controversies, and (5) the shared interest of all states in furthering substantive social

6   polities. <u>See</u> <u>Autogenomics, Inc. v. Oxford Gene Tech. Ltd.</u>, 566 F.3d 1012, 1025 (Fed. Cir. 2009).

7       Defendants argue that exercising jurisdiction would be unreasonable because Dr. Adams has no

8   contacts in the forum state. Mot. at 10-11. Second, defending a suit in California would be burdensome

9   to the Defendants because evidence related to the development of the patents is found elsewhere. Mot.

10  at 11. In response, Plaintiffs contend that the exercise of personal jurisdiction in the present matter is

11  fair and reasonable for two reasons. First, Defendants "have proven themselves financially capable of

12  engaging in protracted negotiations and litigation with California-based entities." Opp'n at 14. Second,

13  California has an interest in adjudicating the dispute to prevent harm to its residents. <u>Id.</u>

14      The Court finds Defendants' arguments, which mostly reiterate arguments made with respect

15  to the first two prongs of the specific jurisdiction test, unpersuasive. First, as discussed above,

16  Defendants have substantial contacts with California sufficient to support personal jurisdiction, and

17  there is a causal relationship between these contacts and Plaintiffs' suit. Given Defendants' extensive

18  licensing and enforcement activities with California residents, it would not be unfair to require them to

19  litigate in this Court. Second, it is likely that relevant evidence will be found in numerous locations and

20  will not be solely in e.g., Utah or Wyoming. Third, Defendants have made no showing they are

21  financially unable to defend themselves in this venue. Finally, given the number of California

22  companies, including ACI, which have been subject to Defendants' enforcement effort, California has

23  an interest in adjudicating this dispute.

24      The Court finds that Defendants have failed to carry their burden of demonstrating the exercise

25  of jurisdiction would be unreasonable, and holds that exercising personal jurisdiction does not violate

26  due process under <u>International Shoe</u>, 326 U.S. at 316.

27      Next, Defendants contend that the fiduciary shield doctrine precludes the exercise of jurisdiction

28

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

over AFTG and PMAA. Mot. at 12:5-12. Defendants' argument is implausible because the fiduciary shield doctrine insulates corporate employees, not corporations, from personal jurisdiction based on acts performed in their official capacities. See, e.g., Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989) ("Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."). Furthermore, even if the fiduciary shield doctrine was intended to protect corporations from acts of their owners, Plaintiffs have already established sufficient bases warranting the exercise of specific personal jurisdiction over both AFTG and PMAA independent of any actions of Adams in his individual capacity. Both AFTG and PMAA have enforced or attempted to enforce their patent rights based upon obligations that Adams, AFTG and PMAA contend are required under the HP license agreement, including the filing of multiple actions in Wyoming against 20 California defendants where AFTG and PMAA are both named plaintiffs. See Docket Item Nos. 30-35, 30-36, and 30-37. Similarly, even assuming the fiduciary shield doctrine applied to Adams, all three defendants are subject to personal jurisdiction in California because Adams is an agent of both AFTG and PMAA and his enforcement activities are imputed to both AFTG and PMAA. See Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1189 (9th Cir. 2002) (contacts of employer's agents or employees are imputed to the employer).[6] Accordingly, the Fiduciary Shield Doctrine does not apply to AFTG and PMAA.

For the above reasons, the Court DENIES Defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

**B.      Motion to Dismiss for Failure to State a Claim**

Defendants also move to dismiss all claims pursuant to Rule 12(b)(6). Under Federal Rule of

---

[6]      The only support Defendants proffer for their contention that the fiduciary shield doctrine extends to AFTG and PMAA is a Ninth Circuit case, Kransco Mfg., Inc. v. Markwitz, 656 F.2d 1376, 1379 (9th Cir. 1981). In Kransco, however, the Ninth Circuit expressly declined to consider whether the German defendant in a declaratory judgment action for non-infringement was the alter ego of his U.S. based distribution company because the plaintiff did not offer any evidence to the district court to support such a theory. See Kransco, 656 F.2d at 1378. Accordingly, in Kransco, the Ninth Circuit merely applied the traditional jurisdiction analysis of International Shoe and the equivalent Ninth Circuit analysis in Data Disc, 557 F.2d at 1286, to decide whether the Defendant had engaged in sufficient forum related activities to warrant the exercise of personal jurisdiction. See Kransco, 656 F.2d at 1379-1380. Thus, Defendants' reliance on Kransco is misplaced.

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

1    Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which

2    relief may be granted. See Fed. R. Civ. P. 12(b)(6).

3            1.    Pleading Standard

4            "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim

5    showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim

6    is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007)

7    (quoting Fed. R. Civ. P. 8(a)(2)). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a

8    complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon

9    which relief can be granted. Fed. R. Civ. P. 12(b)(6). The pleading is construed in the light most

10   favorable to the non-moving party and all material allegations in it are taken to be true. Sanders v.

11   Kennedy, 794 F.2d 478, 481 (9th Cir.1986). However, even under the liberal pleading standard of

12   Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his

13   entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

14   elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478

15   U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not

16   assume unstated facts, nor will it draw unwarranted inferences. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

17   (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific

18   task that requires the reviewing court to draw on its judicial experience and common sense."); Cousins

19   v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009); Sprewell v. Golden State Warriors, 266 F.3d 979, 988

20   (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory,

21   unwarranted deductions of fact, or unreasonable inferences."). Under Twombly, a plaintiff (or

22   counterclaimant) must not merely allege conduct that is conceivable but must instead allege "enough

23   facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility

24   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

25   defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S.

26   at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a

27   sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are

28

United States District Court
For the Northern District of California

18

1   merely consistent with a defendant's liability, it stops short of the line between possibility and

2   plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 556-57) (internal quotation

3   marks omitted). In sum, if the facts alleged foster a reasonable inference of liability – stronger than a

4   mere possibility – the claim survives; if they do not, the claim must be dismissed. See Iqbal, 129 S. Ct.

5   at 1949-50.

6                                   2.     Analysis

7          Defendants argue that the Complaint contains "only naked assertions completely devoid of

8   further factual enhancement." Mot. at 20. They contend that Plaintiffs fail to specify the grounds for

9   their claims of patent invalidity and fail to identify the products for which they seek a finding of

10  non-infringement. Id.

11         In response, Plaintiffs point out that they have identified the statutory basis for each claim of

12  invalidity. In particular, the Complaint alleges that each patent-in-suit is "invalid for failing to meet one

13  or more of the conditions and requirements for patentability set forth under 35 U.S.C. §§ 101, 102, 103

14  and/or 112." See Complaint, ¶¶ 42, 53, 64, 75, 86, 97, 108, 119, 130, 141, 152, 163.

15         Even after Twombly and Iqbal, courts have upheld such pleadings as sufficient. See, e.g., Pfizer

16  v. Apotex, Inc., 726 F. Supp. 2d 921, 937-938 (N.D. Ill. 2010) (allegations that list the statutory

17  provisions are sufficient to place party on notice of claims of failure to satisfy conditions of patentability

18  and the grounds for such claims); Elan Pharma Int'l Ltd. v. Lupon Ltd., 2010 WL 1372316, at *4

19  (D.N.J. March 31, 2010).

20         The court agrees with those decisions particularly since, as Plaintiffs correctly note, requiring

21  a heightened pleading of invalidity would circumvent this Court's Patent Local Rules which require

22  detailed disclosures as to invalidity contentions soon after the suit is filed. Opp'n at 24-25. Patent L.R.

23  3-5 requires that in patent cases for declaratory judgment of invalidity, contentions be served shortly

24  after the defendant serves its answers or after the Initial Case Management Conference (unless the

25  defendant files a counterclaim for infringement in which case the plaintiff must serve its invalidity

26  contentions shortly after receiving the other party's infringement contentions). See Patent L.R. 3-3. By

27  requiring the party claiming invalidity to flesh out and support its invalidity contentions early on, the

28

United States District Court
For the Northern District of California

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

Patent Local Rules fulfill the function of <u>Twombly</u> and <u>Iqbal</u>.  <u>See</u> <u>Elan Pharma Int'l Ltd.</u>, No. No. 09-1008 (JAG), 2010 WL 1372316, at *5 (a motion pursuant to Rule 12(b)(6) "suggests a factual disclosure that the Federal Circuit did not require, and a disclosure that, if required here, would make [the district court's Patent Local Rules] superfluous.").  <u>See</u> <u>generally</u> <u>Baker Hughes Oilfield Operations, Inc. v. Summerline Asset Mgmt.</u>, LLC, 2010 Bankr. LEXIS 1582, 4-6 (Bankr. W.D. Tex. May 9, 2010) (Twombly is meant to "weed out frivolous litigation where insufficient facts are alleged to form the basis for a claim," but "should not be read to raise the pleading requirement to that of a summary judgment."); <u>Howard v. Whiteside</u>, No. 10-13, 2010 U.S. Dist. LEXIS 36359, at *12, *17 (E.D. Mo. Apr. 13, 2010) (plaintiff's factual allegations sufficient to support declaratory judgment action despite lack of detail).

Plaintiffs' claim for a declaratory judgment of noninfringement, which fails to identify any specific products, is more problematic.  It is true that one purpose of the complaint is to provide reasonably detailed notice of the claims asserted (<u>see</u> <u>Grid Systems Corp. v. Texas Instruments Inc.</u>, 771 F. Supp. 1033, 1037 (N.D. Cal. 1991), and that here because Defendants threatened suit against the Plaintiffs over the patents sub judice, the court should presume that Defendants know which infringe.[7] Nonetheless, without identifying the accused products, there simply is no way to adjudicate an infringement claim.  Absent identification of the products accused of infringement, there is no concrete case or controversy or sufficient specificity to satisfy <u>Twombly</u> and <u>Iqbal</u>.  <u>Cf.</u> <u>MedImmune, Inc. v. Genentech, Inc.</u>, 127 S.Ct. 764, 771 (2007) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to  warrant the issuance of a declaratory judgment.") (internal quotations and citations omitted); <u>Panavise Prods., Inc. v. Nat'l Prods., Inc.</u>, 306 Fed. Appx. 570, 572-574 (Fed. Cir. 2009) (noting that "[i]n analyzing jurisdictional questions in declaratory judgment actions, there is no bright-line rule" and finding that the "mere allegation" that a product "potentially" infringes a patent falls short of establishing a controversy, "when viewed under

_____

[7]     It bears noting that the allegations of Defendants' complaint in the Wyoming actions are no more specific than Plaintiffs' declaratory relief claim herein.  See Complaint,¶¶ 28-34; Docket Item Nos. 30-35 at ¶¶9-16, 30-36 at ¶¶16-18, and 30-37 at ¶16, ¶¶30-32.

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court

For the Northern District of California

1    the totality of the circumstances."). If Plaintiffs are concerned about particular products, they may seek

2    to amend the complaint and provide greater specificity in seeking declaratory relief.

3        For these reasons, the Court finds Plaintiffs sufficiently state a claim for declaratory relief on

4    invalidity but do not state a claim for declaratory relief on infringement. The Court therefore GRANTS

5    IN PART and DENIES IN PART Defendants' Motion to Dismiss under Rule 12(b)(6).

6    **C.    Motion to Transfer**

7        To transfer a case under 28 U.S.C. § 1404(a), a defendant "must make a strong showing" that

8    the plaintiff's chosen forum is inconvenient. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d

9    834, 843 (9th Cir. 1986). Defendants have not done so here. In fact, Defendant's argument that

10   "personal jurisdiction is proper in Wyoming" is directly contradicted by the District of Wyoming's

11   determination that it cannot exercise personal jurisdiction over Plaintiffs. Moreover, the Wyoming

12   Actions, which were previously pending in that district, have now been dismissed. Defendants have not

13   proffered any legal authority that would justify transferring this action back to the District of Wyoming

14   in these circumstances.[8] Nor have Defendants proffered evidence that the District of Wyoming is more

15   convenient for the parties, witnesses, or serves the interest of justice. Accordingly, their motion to

16   transfer is DENIED.

17   **D.    Motion to Stay**

18       Defendants have not proffered any legal authority in support of their motion to stay this case

19   pending the appeal of different actions in another district. The Wyoming Actions are no longer active.

20   Moreover, the Wyoming Actions were never "related" to the Instant Action pursuant to Local Rule 3-12.

21   The court will not stay this case pending appeal of dismissals that were ordered in unrelated actions in

22   another district. Accordingly, Defendants' motion to stay is DENIED.

23   **E.    First to File Rule**

24       Defendants contend that the "first to file" rule applies in this action. The court disagrees. The

25   "first to file" rule is based on principles of judicial efficiency, judicial comity, and sound judicial

26   ───────────────

27       [8]   In fact, at a hearing in Wistron Action, the Adams Defendants conceded that a "transfer
     no longer makes sense, and effectively withdrew their transfer request." See Nelson Decl., Exh. 35
28   at 4 n.4.

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY

United States District Court
For the Northern District of California

1  administration. <u>Alltrade, Inc. v. Uniweld Prods., Inc.</u>, 946 F.2d 622, 623 (9th Cir. 1991). In February

2  2011, the District of Wyoming issued a final, appealable order dismissing the Wyoming Actions for lack

3  of personal jurisdiction over the Plaintiffs in the Instant Action. Defendants have not articulated why

4  a dismissal or transfer here would serve the principles of the rule when the Wyoming Actions are no

5  longer pending in that district.[9] Accordingly, the court declines to apply the "first to file" rule to this

6  action.

7                                   **IV.  CONCLUSION**

8        For the reasons discussed above, the court hereby GRANTS in part and DENIES in part

9  Defendants' Motion to Dismiss. In particular, the Court dismisses without prejudice Plaintiffs' claims

10 for declaratory relief on infringement. The motion to dismiss is otherwise DENIED.

11       Should Plaintiffs seek to amend the complaint to address the dismissed claims, they shall

12 have 30 days from the date of this order to file an amended complaint.

13       Defendants' Motions to Transfer or Stay this case are DENIED.

14 **IT IS SO ORDERED.**

15 Dated:  December 29, 2011

16                                             EDWARD J. DAVILA
                                              United States District Judge

17

18

19

20

21

22

23

24

25       [9]     Defendants' reliance on <u>Time Warner Cable, Inc. v. GPNE Corp.</u>, 497 F. Supp. 2d 584,

26 588-91 (D. Del. 2007), is misplaced. In that case, the action that was filed first was still pending.
   The issue was whether an amended complaint naming additional defendants was entitled to enjoy

27 the date the original complaint was filed, or if such amendment defeated "first filed" status. The
   facts are inapposite to those here because there is no case currently pending in the District of

28 Wyoming.

CASE NO. 5:CV 11-00192-EJD
ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS'
MOTION TO TRANSFER; AND (3) DENYING DEFENDANTS' MOTION TO STAY